Simoh J. Libbowitz, J.
Defendant seeks an order directing a jury trial of Ms condition of insamty to determine whether he is a “ dangerous incapacitated person ” whose detention is to be continued at Matteawan State Hospital. Defendant had been indicted on February 18,1957, among other counts, for attempted murder. He was found to be incapable of standing trial and *520 was committed to Matteawan on April 18,1957 as a “ dangerous incapacitated person.” Defendant has been continuously confined for a period of 15 years, which is short of the two-third maximum term (25 years) for the highest class felony for which defendant was indicted. To further detain defendant in Matteawan, a security hospital under the jurisdiction of the Department of Correction, the Director of the hospital gave notice to deferídant pursuant to article, 730 of the CPL of an application for an order to continue the custody of defendant as a ‘ dangerous incapacitated person.” Upon defendant’s request, a hearing was ordered but was held without a jury. Defendant, however, had reserved his right to a jury trial. At the conclusion of the hearing, the court determined that defendant was still a “ dangerous incapacitated person ” and issued an order of retention for a period of one year.
Prior to these proceedings defendant, together with others confined at Matteawan (persons indicted on felony charges but unable to stand trial) commenced a civil rights action in the United States District Court for the Southern District of New York to declare section 662-b of the Code of Criminal Procedure and its successor, article 730 of the CPL, unconstitutional. They contended that they alone of all classes of mentally ill are not accorded the right to a jury trial as to dangerousness before commitment or continuance of detention at Matteawan. Subsequent to defendant’s hearing in this court on the Director’s application for an order of retention, a convened three-Judge district court declared old section 662-b of the Code of Criminal Procedure and subdivision 1 of section 730.60 of the CPL “ unconstitutional * * * by failing to provide [protection to defendant’s class’s right of] a jury trial to determine dangerousness as a condition to confinement in hospitals operated by the Department of Correction.” (Gomez v. Miller, 341 F. Supp. 323, 333). The District Court noted that, of the mentally ill, a jury trial was accorded to only those not charged with a crime (Mental Hygiene Law, § 85) or charged with misdemeanors but not yet tried (CPL 730.50, subd. 1; 730.60, subd. 3) or acquitted by reason of mental disease or defect (CPL 330.20, subd. 6) or convicted of a crime whose sentences are about to expire (CPL 730.70, subd. 2). In pointing up the anomalous situation of defendant, who must be presumed innocent, the court projected in vivid color on the screen of civil rights the inequity of treatment accorded defendant’s class.
Detention in a State hospital under the Department of Correction (Dannemora and Matteawan) as distinguished from a *521 hospital under the Department of Mental Hygiene is graphed in harsh hues in United States ex rel. von Wolfersdorf v. Johnston, 317 F. Supp. 66; United States ex rel. Schuster v. Herold, 410 F. 2d 1071, cert. den. 396 U. S. 847; Neely v. Hogan, 62 Misc 2d 1056; and Matter of Anonymous, 69 Misc 2d 181). So different are the rights of the inmates that the court, in United States ex rel. von Wolfersdorf v. Johnston (supra), held that incarceration in Matteawan for 20 years of one determined insane and unable to stand trial with no likelihood of his ever being brought to trial constituted cruel and inhuman punishment.
Article 730 of the GPL does not specifically accord defendant a right of jury trial. To declare the article or sections thereof unconstitutional as it relates to defendant’s class would be a simple matter (see People v. McCloud, 62 Misc 2d 1086; Baxstrom v. Herold, 383 U. S. 107; Gomez v. Miller, supra). However, any semblance of rationality disappears when persons indicted but not convicted of a crime are deprived of their right to a jury trial while such a trial is granted to those who have been convicted or to those who were acquitted solely by virtue of their mental condition. ‘1 The policy of this court has always been to construe statutes in such a manner as to uphold their constitutionality ” (People v. Bailey, 21 N Y 2d 588, 596) and so long as the purpose of the statute is not perverted by requiring a jury trial and “no rational justification [can be found] for withholding these safeguards ” (Bolton v. Harris, 395 F. 2d 642, 652), article 730 of the GPL must be construed to require them. A method employed by the Court of Appeals in People v. Lally (19 N Y 2d 27), People v. Bailey (supra), and Matter of Buttonow (23 N Y 2d 385) to insure those safeguards is to read into the applicable statute the right of a jury trial.
Careful examination of the sections of article 730 of the GPL in the light of the established policy to uphold their constitutionality reveals the following:
(a) Subdivisions 3 and 4 of section 730.30 provide for a hearing to determine “ the issue of capacity or dangerousness ”.
(b) Subdivision 1 of section 730.50 requires “a superior court, following a hearing conducted pursuant to subdivision three or four of section 730.30 ” (in a de novo determination of incapacity) “ [i] f it is satisfied that the defendant is an incapacitated person * * * when the indictment charges a felony * * * must issue an order of commitment committing the defendant to the custody of the commissioner for care and treatment in an appropriate institution ”.
*522 (c) Subdivision 2 of section 730.50 relates to inmates as in the instant case and requires a hearing when one is demanded before issuing an order of retention if the court ‘ is ¡satisfied that the defendant continues to be an incapacitated person or is or continues to be a dangerous incapacitated person
(d) Subdivision 3 of section 730.60 provides “that when a defendant is in custody pursuant to an order of commitment or an order of retention and he has been adjudicated a dangerous incapacitated person, the commissioner may transfer him to any appropriate institution operated by the department of mental hygiene or the department of correction.” At this point the procedure dealing with civil patients as outlined in article 5 of the Mental Hygiene Law is substantially .similar. Significantly, the very next sentence of subdivision 3 provides “ "When a defendant is in custody pursuant to a final or temporary order of observation, the commissioner may transfer him to an appropriate institution operated by the department of correction [Dannemora or Matteawan] in the manner prescribed by section eighty-five * * * of the mental hygiene law. ” (Emphasis added.) Subdivision 4-a of section 85 of the Mental Hygiene Law expressly provides that “If the director of Matteawan state hospital shall determine that the condition of any patient * * * requires his further retention * * * the provisions of sections .seventy-three and seventy-four of this article shall apply to all applications for orders authorizing retention * * , * except that the question to be determined thereon shall be the continued dangerous mental illness of such patient.” Section 74 of the Mental Hygiene Law was specifically enacted to provide for a review by a jury trial of an order of retention or transfer. .Subdivision 3 of section 730.60 does thus place in sharp focus the Legislature’s intent to bar a transfer of an incapacitated person to “ any appropriate institution operated by the * * * department of correction ’ ’ without the safeguard of review with a jury trial.
Without straining or perverting the legislative intent as expressed in article 730 of the CPL, but in harmony with it, this court reads into subdivision 3 of section 730.60 immediately after the words “ transfer him to ”, the words “ or retain him at,” thereby granting the defendant’s class the right .of review under section 74 of the Mental Hygiene Law.
The mandate of the District Court, as set forth in Gomez v. Miller (341 F. Supp. 323, supra), to accord defendant’s class a right of jury trial, was founded on a declaration of unconstitutionality ¡of subdivision 1 of section 730.60 of the CPL. The Dis *523 trict Court retained jurisdiction pending disposition of other issues “ hy the courts of New York.” Although this court finds section 730.60 constitutional by reading into subdivision 3 of section 730.60 the right of defendant’s class to a review under section 74 of the Mental Hygiene Law of the order of retention, this court nevertheless is of the opinion that article 730 of the CPL does, in fact, accord defendant’s class a right of jury trial.
Subdivision 3 of section 730.60 of the CPL dovetails in logical order with section 730.70. Section 730.70 provides that “ When a defendant is in the custody of the commissioner on the expiration date of a final or temporary order of observation or an order of commitment * * * [t]he procedure governing the continued confinement of the defendant shall be as follows Subdivision 2 of section 730.70 provides “If the defendant is confined to an institution in the department of correction, and if the superintendent of such institution determines that the defendant is so dangerously mentally ill * * * as to require continued care and treatment * * * he must * * * apply for an order of certification m the manner prescribed in section eighty-five * * # of the mental hygiene law.” (Emphasis added.) The Legislature here states in positive language that, if the Superintendent determines that the defendant requires continued care and treatment at an institution such as Matteawan, he must apply for an order of certification in the manner prescribed in section 85 of the Mental Hygiene Law. Thus, when the Director of Matteawan in the instant proceeding sought an order to continue defendant’s custody, he did so because he could no longer detain defendant under the original order of commitment. In effect, the original order had expired and the Director was compelled to make an application to this court for an order of retention. The order of retention of defendant for another year at Matteawan that was granted in this proceeding constituted an order of certification of the Director’s determination that “ the defendant is so dangerously mentally ill * * * as to require continued care and treatment ’ ’ at Matteawan. That order of retention must be construed to have been issued pursuant to section 85 of the Mental Hygiene Law and is therefore subject to review under section 74 of the Mental Hygiene Law, which latter section accords the right of a jury trial.
Accordingly, defendant’s motion will be considered as one made under section 74 of the Mental Hygiene Law to review by a jury trial the prior order of a Justice of this court dated June 22,1972 and it is in all respects granted.