Richard W. Wallach, J.
Petitioner Charles Batman would have every right to be skeptical about the declaration of purpose in article 17-A of . the Insurance Law which established the Motor Vehicle Accident Indemnification Corporation, and the legislative expression of "grave concern” that innocent victims of automobile accidents are not promptly recompensed by uninsured defendants. Mr. Batman was injured in a motor vehicle accident on September 17, 1966. After a jury trial before me three and a half years later, judgment was entered against MVAIC on April 22, 1970. Thus far MVAIC has successfully resisted payment of this judgment for over five years based on a somewhat peculiar combination of circumstances, and Mr. Batman still remains uncompensated as we approach the 10th anniversary of the crash.
MVAIC entered this case (a three-car chain collision at a stop light in which Mr. Batman was the driver of the lead car) when Knickerbocker Insurance Co. on July 21, 1967, disclaimed coverage for the owner of the third automobile based on the latter’s "non-co-operation,” and within 10 days petitioner served timely notice of his intention to seek relief against MVAIC (Insurance Law, § 608, subd [c]). Post the entry of judgment petitioner sought voluntary payment, but *912 MVAIC refused, despite its full participation in the plenary trial, on the ground that plaintiff had failed to establish the validity of Knickerbocker’s disclaimer of coverage (Insurance Law, § 611, subd [d]).
Petitioner rested on his oars until 1975 when he commenced an utterly misconceived action under section 167 of the Insurance Law to compel payment of the judgment. This section of the statute, authorizing direct action against an insurer carrier after entry of judgment against an insured driver and failure to pay, has no application to MVAIC. When petitioner moved for summary judgment the matter was referred to me, and acting under CPLR 103 this court entered an interim order dated October 8, 1975, converting the action into the special proceeding mandated by statute to compel payment (Insurance Law, § 611), and directing that notice of petition be furnished both to MVAIC and Knickerbocker. All this has now been accomplished and the matter is now before the court in the proper procedural matrix.
With the lapse of time Knickerbocker’s situation changed radically. By judgment dated November 18, 1971, Knickerbocker was adjudged insolvent and the Superintendent of Insurance was appointed liquidator of its assets. The superintendent now properly asserts that the Civil Court has no jurisdiction, and that any claim against the superintendent must be asserted before a Referee to be appointed by the Supreme Court. Counsel for both the superintendent and MVAIC have graciously invited petitioner to litigate the issues surrounding the validity of the disclaimer before the Referee at a hearing which "will, at a certain time, be set down within the liquidation proceeding”.
MVAIC argues, not without some force, that petitioner and this court are bound by the provisions of subdivision [d] of section 611 of the Insurance Law, and that petitioner’s inability to produce a final declaratory judgment that the disclaimer was valid bars any relief in this forum. To this petitioner’s answer is basically a cri dé coeur that he should not be made the hapless shuttlecock of two branches of the same State government, the Indemnity Corporation and the superintendent as liquidator (Brown v Reid, 72 Misc 2d 237).
Strong policy considerations impel a resolution of the impasse at this juncture. "The New York State Legislature, in enacting this article intended to afford a remedy to innocent victims * * * Such intent may not be thwarted by delaying *913 actions tending to defeat petitioner’s right to compensation under the article” (Matter of Hardmon v Motor Vehicle Acc. Ind. Corp., 67 Misc 2d 841, 842).
The concept of estoppel against MVAIC suggests itself. Is it fair to say that MVAIC, by assuming to act for the defendant whose carrier disclaimed, and by going forward with a plenary trial, is now estopped to raise the issue of disclaimer as against this petitioner? Estoppel has been successfully invoked against MVAIC in the past (Matter of Motor Vehicle Acc. Ind. Corp. v Marrero, 17 NY2d 342; Matter of Hulsey v Motor Vehicle Acc. Ind. Corp., 54 Misc 2d 614).
Estoppel as such, however, is not free from difficulty.
It cannot really be said that MVAIC affirmatively misled petitioner; in proceeding with the trial it merely discharged its statutory duty, and petitioner was charged with statutory notice of the requirements of subdivision [d] of section 611 of the Insurance Law. However a closely related doctrine does apply. By assuming to defend the motorist whose carrier disclaimed, MVAIC acknowledged that the disclaimer was valid. Otherwise all of its acts on behalf of that defendant were gratuitous and unauthorized. If MVAIC really challenged the validity of the disclaimer it should have sought a stay of the trial so as to compel plaintiff then to assert, prior to such trial, its rights against the then-solvent Knickerbocker by way of declaratory judgment. Having accepted and adopted the sufficiency of disclaimer by representing the "uninsured” motorist at a plenary trial, MVAIC should not now be permitted to assert a wholly inconsistent position (Ferrandino v Cartelli, 12 AD2d 604; See Beck, Estoppel Against Inconsistent Positions in Judicial Proceedings, 9 Brooklyn L Rev 245; Note, The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings, 59 Harv L Rev 1132).
Additional considerations dictate such a result. It would be utterly anomalous to assign to petitioner at this juncture the burden of litigating the disclaimer issue, since petitioner’s only present interest would be to establish the negative of the coverage proposition as quickly as possible. "[T]he law takes cognizance of the frailties of human nature and realizes that, even in litigation, one, because of consideration for his opponent or for other reasons personal to himself, may not desire either to establish or defend his position to the utmost” (von Moschzisker, Res Judicata, 38 Yale LJ 299, 303). The public interest will be better served by casting that burden upon *914 MVAIC, which will now have an affirmative and compelling interest in asserting the invalidity of the disclaimer in the liquidation proceedings. The "inconsistency estoppel” will not operate in this setting, since Knickerbocker has yet to be a participant, much less a party, in litigation of the disclaimer issues.
Accordingly, the application of the petitioner is granted to the extent of directing respondent MVAIC to pay to petitioner the sum of $3,602.50 with interest from April 22, 1970, the date of entry of the judgment. As against respondent superintendent as liquidator the application is dismissed, without prejudice to the rights of MVAIC to assert its claim for reimbursement in whole or in part before the Referee in the liquidation proceedings.